## SUCCESSION OF MONTEGUT.

No collation is due to the succession of the wife for advances by the husband to one of his children, made in his own name and right, while the Code of 1808 was in force, where the father has died, and the widow has not accepted the community. Code of 1808, b. 3, tit. 5, art. 21. Nor will the circumstance that she did not renounce the community in strictly legal form be viewed as an acceptance, though the law in force at the time required the same formalities in renouncing. as in accepting, a succession.

APPEAL from the Second District Court of New Orleans, *Strawbridge*, J., presiding. In 1807, a marriage contract was entered into between *J. B. Neurisse* and *Marie Montégut*, in which *Joseph Montégut, sr.*, settled a dowry of ten thousand dollars upon his daughter, the said *Marie*, which he promised to pay in May, 1808. In April, 1814, *Joseph Montégut, sr.*, gave to *Mrs. Neurisse*, in payment of the dowry, which had not been paid as promised, a house and lot. In January, 1808, the said *Montégut, sr.*, made a donation *intervivos* to his son,

*Joseph Montégut, jr.,* of a certain plantation, valued at ten thousand dollars, in advance of the donee's share in his father's succession: An advance of a like sum was made as dowry to a daughter married to *Rofsignác,* in 1806. In 1814, *Joseph Montégut, sr.,* made a *cessio bonorum,* and his wife, *Françoise Delille,* was paid, contradictorily with her husband's creditors, the amount of her matrimonial rights, as liquidated by the syndics' account. In November, 1819, *Joseph Montégut, sr.* died insolvent, and his succession was never opened. In December, 1836, *Françoise Delille,* the widow of *Joseph Montégut, sr.,* died, leaving some property, and her succession was administered by *E. Montégut,* one of her grand-children and heirs. The administrator filed his account in March, 1846, to which an opposition was made by the children of *Mrs. Clama-geran,* a daughter of the late widow *Montégut,* calling upon the appellees to collate to the succession of said widow *Montégut* what those whom they repre-sent had received from *Joseph Montégut, sr.,* as explained above. The oppo-sition was dismissed, and the opponents appealed.

SUCCESSION
OF
MONTÉGUT.

*Benjamin* and *Micou,* for the appellants: A donation by one parent to a child of both, out of the property of the community, is esteemed the donation of both parents. C. C. 2373, 1320. Code Nap. 1439, 850. Old Code, p. 194. A donation of community property by the husband to one of the children, must be collated one-half to the father's and one-half to the mother's estate. *Baillio* v. *Baillio,* 5 Mart. N. S. 228. 4 Touillier, p. 461, no. 464. 6 Pothier, Commu-nauté, p. 393, no. 648. To this rule there is an exception, if the widow renounce the community. 4 Touillier, no. 464. Code Nap. art. 1439, Rogron, note. But *Mrs. Montégut* never renounced. During the life time of the husband, renunciation could only have been made after a judicial separation; after his death, only upon inventory made. But no such proceedings occurred, and of course renunciation cannot be presumed or implied.

*Le Gardeur,* contrâ. Property received from the husband is not subject to collation in favor of the succession of the wife. C. C. 1320. Chabot, Succes-sions, vol. 2, p. 389. 7 Duranton, nos. 242, 243. 4 Zachariæ, Droit Civ. Fran-çais, p. 447, § 631. This case must be determined by the Code of 1808. Un-der that Code the powers of the husband, as head of the community, were infinitely greater than those given by the Code of 1825. Now, the husband can alienate by onerous title only the property of the community. But, under the Code of 1808, he had a right to dispose of it by gratuitous as well as by onerous title, and this without the consent of the wife. Art. 66 of the old Code (p. 336) is positive to that effect. Under the old Code, when the husband, after mak-ing a *cessio bonorum,* died insolvent, there was no community; indeed, none could have existed, since the wife had no right whatever until her husband was dead.

Let us now see how the settlement of dowry was made, and at whose charge it was, under the old Code. Art. 20, p. 326, says: "Dowry can be settled ei-ther by the wife herself, or by her father or mother, or other ascendants, or by her other relations, and even by strangers." The next article (21) provides as follows: "If the father or mother settle jointly a dowry, without distinguishing the part of each, it shall be supposed constitued by equal portions. If the dow-ry be settled by the father alone for paternal and maternal rights, the mother, although present to the contract, shall not be obliged, and the father alone shall remain answerable for the whole of the dowry." The french Code contains an article, from which article 21 of the old Code is copied verbatim. Article 1544 reads thus: "Si les père et mère constituent conjointement une dot sans dis-tinguer la part de chacun, elle sera censée constituée par portions égales. Si la dot est constituée par le père seul pour droits paternels et maternels, la mère, quoique présente au contrat, ne sera point engagée; et la dot de-meurera en entier à la charge du père." The construction put on this article of the french Code by some of the most distinguished commentators of France will assist us in coming to a correct understanding of art. 21 of the old Code. Touillier, vol. 14, no. 86, says: "Nous avons dit que si la dot n'a pas été conjointement constituée, la femme n'étant point engagée par l'é-ronciation que la dot est pour droits paternels et maternels, la totalité demeure à

la charge du mari.    *    *    *    Loin de voir rien de bizarre dans la second disposition de l'art. 1544, qui laisse à la charge du père la totalité de la dot qu'il a constituée seul, pour droits paternels et maternels, on n'y voit donc rien que de fort juste et de conforme au droit commun." Zachariæ, Droit Civil Français, vol. 3, page 389, says : " La constitution de dot, faite par le père seul, n'engage pas la mère, lors même que le père a déclaré constituer la dot pour droits paternels et maternels, et que la mère a été présente au contrat." Benoit, Traité de la Dot, p. 117, no. 28, says : " La dot constituée, du vivant de la mère, par le père seul, est en entier à la charge du père : 1o. Si la constitution est faite purement et simplement, sans explication de ce que le père a entendu donner de son chef et de celui de son épouse. 2o. Si la dot est constituée, *effuso sermone*, pour droits paternels et maternels ; et cela quand bien même la mère eût apposé sa signature à ce contrat, la présence de la mère à ce contrat étant insuffisante pour faire présumer son consentement. 3o. Si même dans le cas d'une société d'acquets existante entre les époux, le père avait constitué la dot en avancement de sa succession." Thus, all these jurists unite in saying that when the dowry is settled by the father alone, he is answerable for the whole of the dowry, or rather the whole of the dowry is at the father's charge, and the mother remains a stranger to it. The language of art. 21 of the Code of 1808, is verbatim that of art. 1544 of the french Code. Therefore, under the old Code, the whole of the dowry was at the charge of the father, when he alone had settled it. In this case, the dowry of *Mrs. Neurisse* was settled and paid by *Mr. Montégut* alone. The french commentators, after stating, under art. 1544 of the Napoléon Code, that the dowry is at the sole and exclusive charge of the father when it is settled by the father alone, say that when the dowry has been settled and paid out of community property, although by the father alone, one half of it is chargable to the father, the other half to the mother. But their opinion is founded on an express provision of the Code Napoléon, art. 1439, which says : " La dot, constituée par le mari seul à l'enfant commun en effets de la communauté, est à la charge de la communauté ; et, dans le cas où la communauté est accepté par la femme, celle-ci doit supporter la moitié de la dot, à moins que le mari n'ait déclaré expressément qu'il s'en chargeait pour le tout, ou pour une portion plus forte que la moitié." No such provisions are to be found in our old Civil Code, nor even in that of 1825. They both provide that when the father settles alone the dowry, the whole of it is chargable to him. Neither says that when the father settles a dowry out of community property, one half of it is chargable to the father and the other half to the mother. In other words, the provisions of art. 1439 of the Code Napoléon have not been incorporated into our Codes. The rule under our law is absolute. No distinction or exception has been made, and we have no right to admit distinctions which the law itself has not admitted ; *ubi lex non distinguit, nec nos distinguere debemus*. Should the court, however, adopt the whole rule, as set down by the french commentators, it must be adopted with the restrictions put upon it by those commentators themselves. They all require that the community should have been accepted by the wife. Indeed the very article requires that. Code Napoléon, art. 1439. Duranton, v. 7, no. 244. Zachariæ, v. 3. p. 390. Benoit, v. 1, p. 121. Until the acceptance by the wife, it cannot be said that a community ever existed. 7 Mart. N. S. 68. *Guice* v. *Laurence, ante,* p. 226.

Has the acceptance of the wife been shown ? *Montégut* died in 1819, and this case is to be tested by the provisions of the old Code, which, although it provides as the new one, that the wife's renunciation shall be made in a certain form, provides also that her acceptance must be made in the same form. Art. 81, p. 340. The last paragraph of that article says : " The acceptance of the partnership or community of gains shall be made (doit se faire) in the same form as is above prescribed for the renunciation of the same." Thus, if we are in default in not showing a renunciation in due form, the opposite party is equally in default in not producing an acceptance, as required by the law of 1808. Under these circumstances, it is plain that the court are left to infer the fact of a renunciation or an acceptance, from all the circumstances of the case. The opposite party have shown nothing tending to establish an acceptance, whereas we have brought forward a mass of facts from which nothing but a renunciation can reasonably be inferred. If *Mrs. Montégut* had accepted the community she would have been answerable for one half of its debts, and certainly would not have

been paid the amount due her out of the proceeds of the sale of the community   Succession
property. She would have been compelled to pay the balance of the community   of
debts. Now, was this the case? No. She gave a release of her legal mort-   Montegut.
gage on the property. She was set down on the tableau, to be paid concurrent-
ly with the other creditors. If she had not renounced the community, she
would have been treated not as a creditor, but as a debtor.

It was contended below that the late Supreme Court, in the case of *Baillio* v.
*Baillio*, 5 Mart. N. S. 228, has laid down the principle, that when the donation is of
common property collation takes place by moiety, although the husband were
the sole agent in the gift or advances to the children. This is true; but
in that case, which differs *toto cœlo* from this, there was a community, the par-
tition of which was before the court. At all events, an isolated decision is en-
titled to no weight, especially when, as in the case of *Baillio*, it clearly violates
the law of the land.

*Blache*, on the same side. Had the dowry been settled by the father alone,
for paternal and maternal rights, even in the presence of the mother, the latter
would not have been bound therefor, and the father alone would have remained
answerable for the whole of it. Code of 1808, p. 326, art. 21. Code of 1825,
art. 2322. Admitting that the dowry was constituted by the father out of the
common funds, it was, on his part, the exercise of the power which the husband,
as the head and master of the community of gains, had to sell or give away the
effects belonging thereto, without the consent and permission of the wife, who
had no sort of right in them until the death of her husband. Code of 1808, p.
336, art. 66. The community of gains which existed between *Françoise Delille*
and her husband, *Joseph Montégut, sr.*, not having been formally accepted by
her, as required by art. 81 of the Code of 1808, p. 340, but she having done acts
which evinced a manifest intention on her part to renounce the community,
she must be considered as having in fact renounced it. Having renounced the
community of gains, the widow *Montégut* lost all right to the effects belonging
thereto, which might have existed at the time of its dissolution; *a fortiori*, to
those which her husband had long before disposed of, by virtue of the provision
of art. 66 of the Code of 1808, p. 336, and in particular to the dowry of $10,000,
settled by him alone on their daughter, the wife of *Roffignac*. The heirs of the
widow *Montégut*, to whom she could not transfer by inheritance a right which
she herself did not possess, cannot claim the collation to her succession of one-
half of the said dowry, or any other property of the community, disposed of in
the same manner.

The judgment of the court was pronounced by

Rost, J. This appeal was taken from a judgment dismissing in part the op-
position of the appellants to the homologation of the tableau filed by the adminis-
trator of their grandmother's succession. The object of the opposition was to
cause all the advances made by the grandfather and grandmother of the oppo-
nents to some of their children, to be brought into collation in the final partition
of this succession. The advances made by the father were made in his own
name and right, previous to the year 1814, when he became insolvent and sur-
rendered his property to his creditors. The matrimonial rights of his wife were
liquidated by the account of the syndics, and, in 1818, she gave them a receipt
for $7,000, "*pour solde et final payement des droits de la comparante, pour ses
apports de toute nature, se reconnaissant entièrement satisfaite pour toute somme
qu'elle pourrait et avait droit de réclamer, à raison de tous ses apports.*" The
syndics further relinquished in her favor their commission, amounting to the sum
of $2,816 15. On the 2d of November, 1819, *Montégut* died, without having
come to a better fortune, leaving a large amount of debts unpaid, and no com-
munity property. His succession, being exclusively composed of his debts,
was not administered upon; his widow never accepted the community of *acquêts*
and gains; and it is clear that she could not have done so, without becoming re-
sponsible for one-half of its liabilities.

The judge of the court below, being of opinion that the acts of the wife must

SUCCESSION OF MONTEGUT.

be regarded as a renunciation of the community; and farther that, by an express provision of the Code of 1808, the *dot*, if settled by the father even for paternal and maternal rights, although the mother was present to the contract, bound the father alone, dismissed the opposition so far as it related to the advances made by the father. Code of 1808, p. 326, art. 21.

The appellants contend that there is an error in the judgment; that a donation by one parent to a child; out of the property of the community, is esteemed a donation of both parties, and must be collated, one half to the father's and the other half to the mother's succession; and they rely in support of that position, on the case of *Baillio* v. *Baillio*, 5 Mart. N. S. 228, and also on the Civil Code, arts. 2373, 1320. Code Napoléon, 850, 1439. Code of 1808, p. 194. 4 Toullier, no. 464. 6 Pothier, Communauté, p. 393, 648.

The appellants have failed to show that the donations made by the father were of community property, and if they were that the eventual rights of the wife in it had ever become absolute by her acceptance. This is absolutely required by the authority to which we are referred. 4 Toullier, 464. So far from there having been an acceptance in this case, the intention of the wife to renounce, and her belief that she had renounced, are rendered manifest by all her acts. The circumstance that she did not renounce in strict legal form, at a time when the law required the same formalities for renunciations and acceptances, cannot be viewed as an acceptance on her part.

If the appellants should succeed, after so long a time, in reviving the community, and in bringing into it property donated by their grandfather before his failure, it is probable that the claims of his creditors would also revive; and that it would become our duty to place that property at the disposal of the syndics. What further responsibilities the appellants might thereby incur, it is unnecessary to determine.

We are satisfied there is no error in the judgment appealed from.

*Judgment affirmed.*